UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

Dr. Cindy Lee, *et al.*,

    Plaintiffs,

v.

Goodville Mutual Casualty Co., *et al.*,

    Defendants.

Case No. 1:14cv933

Judge Michael R. Barrett

## OPINION & ORDER

This matter is before the Court upon Defendants Goodville Mutual Casualty Co., Claim-Net, LLC and Dennis Hester's Motion to Dismiss. (Doc. 12). Plaintiff filed a Response in Opposition (Doc. 16), and Defendants filed a Reply (Doc. 20).

### I. BACKGROUND

This case arises out of an insurance policy for an apartment complex owned by Plaintiffs. The policy was issued by Defendant Goodville Mutual Casualty Company ("Goodville"). The policy was limited to $818,000.00 in the event of a "peril." After a fire occurred at the complex in October of 2012, Plaintiffs reported the loss to Goodville. Defendant Goodville retained Defendant Dennis Hester, owner and manager of Defendant Claim-Net, LLC, as an adjuster for Plaintiffs' claim.

In their Complaint, Plaintiffs explain that on October 15, 2012, they met with Defendant Hester and a construction company to discuss how to protect the property until it could be repaired or rebuilt. Plaintiffs claim that Hester told Plaintiffs that the construction company's proposal would be "very expensive," that Defendants were "not going to pay for it," even though the policy did provide for such coverage.

On October 22, 2012, Plaintiffs retained a public adjuster, Bryan Finnicum, who estimated the cost or repair or rebuilding to be approximately $700,000.00. Plaintiffs claim that Defendants ignored Finnicum's attempts to resolve the claim. Plaintiffs claim that Defendants took no action until May 22, 2013, when a representative of Goodville coordinated a third-party appraisal. The July 15, 2013 appraisal estimated damages of $402,317.73, but relating to fire damage only. Plaintiffs explain that Defendants did not inform them that the purpose of the appraisal was to arrive at a binding value for the entire claim. Plaintiffs disputed an amount which did not include the cost of mold remediation and lost business income.

In August of 2013, Plaintiffs were notified that the local government intended to condemn and demolish the property if it was not promptly restored or rebuilt. Plaintiffs explain that they relayed this information to Defendants who continued to insist that Plaintiffs accept the $402,317.73 appraisal amount. However, according to Plaintiffs, in an emailed dated September 26, 2013, Goodville changed its position and agreed to pay the policy limits towards a rebuild of the property. On October 9, 2013, Plaintiffs state that Goodville's position changed a second time, and Goodville returned to its position that it would only agree to pay the appraisal amount. The property was demolished later that month. Plaintiffs claim that Defendants' bad faith caused Plaintiffs' apartment complex to be condemned and torn down, resulting in property and business loss to Plaintiffs. Plaintiffs explain that to date they have not been compensated on their claim.

Plaintiffs bring claims for (1) bad faith against all Defendants; (2) breach of contract against Goodville; (3) negligent representation against all Defendants; (4) fraud

against all Defendants; (5) promissory and/or equitable estoppel against all Defendants; and (6) punitive damages.

In their Motion to Dismiss, Defendants seek to dismiss Plaintiffs' breach of contract claim against Goodville, enforce the appraisal award, declare Plaintiffs' bad faith claim as being moot, and, if necessary, bifurcate and stay the non-contract claims. While Defendants' Motion is styled as a motion to dismiss, Defendants bring their Motion as one for judgment on the pleadings pursuant to Federal Rule of Civil Procedure 12(c).

## II. ANALYSIS

### A. Standard of Review

A motion for judgment on the pleadings under Federal Rule of Civil Procedure 12(c) is subject to the same standard of review as a Rule 12(b)(6) motion. *Penny/Ohlmann/Nieman, Inc. v. Miami Valley Pension Corp.*, 399 F.3d 692, 697 (6th Cir. 2005). "The factual allegations in the complaint need to be sufficient to give notice to the defendant as to what claims are alleged, and the plaintiff must plead 'sufficient factual matter' to render the legal claim plausible, *i.e.*, more than merely possible." *Fritz v. Charter Twp. of Comstock*, 592 F.3d 718, 722 (6th Cir. 2010) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 677, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009)).

### B. Contractual limitations period

Plaintiffs filed their Complaint in state court on November 6, 2014. (Doc. 3). Defendants claim that Plaintiffs' contract claim is barred by the contractual limitations period in the insurance contract, which provides that suit must be brought "within two years after you first have knowledge of the loss." (Doc. 3-1, PAGEID # 109). Plaintiffs

do not dispute the applicability of this provision, but instead argue that Defendants have waived the contractual limitations period.

Plaintiffs and Defendants both rely on the Ohio Supreme Court's decision in *Hounshell v. American States Ins. Co.* in support of their position. In that case, the court held that "a waiver in these types of cases may occur when the insurer, by its acts or declarations, evidences a recognition of liability under the policy, and the evidence reasonably shows that such expressed recognition of liability and offers of settlement have led the insured to delay in bringing an action on the insurance contract." 67 Ohio St. 2d 427, 431, 424 N.E.2d 311, 314 (Ohio 1981).[1]

According to the allegations in the Complaint, the loss occurred on October 5, 2012, and at the very latest, Plaintiffs knew of the loss on October 15, 2012. (Doc. 3, ¶ 16). On October 9, 2013, during a phone conference, Goodville stated that it was unwilling to pay for a rebuild and would only pay for the appraisal amount. (Id., ¶ 48). On November 19, 2013, Defendants emailed Plaintiffs to notify them that their claim had still not been fully processed and Defendants' investigation was still ongoing. (Id., ¶ 51).

At this juncture it cannot be said that the contractual limitations period was not waived. On November 19, 2013, Defendants informed Plaintiffs that their claim was not fully processed and the investigation was still ongoing. While Defendants may

---

[1] Defendants state that the test from *Hounshell* is that "an insurance company does not waive a limitation of action clause in the policy merely by making a settlement offer of a claim made by an insured, in the absence of any evidence that such offer was coupled with statements or acts which misled the insured into forbearing suit until after the limitation period has expired." (Doc. 20, PAGEID #354) (quoting *Hounshell*, 424 N.E.2d 313). However, this was the position of the appellant, which the Supreme Court of Ohio found to be "too narrow an interpretation of the law of waiver to be applied to this type of case." 424 N.E.2d at 314. Therefore, the court specifically rejected the argument that "that the law of waiver, if applied, should only apply where it is found that the insurance company, by its overt acts, misled the insured into forbearing suit until after the limitation period had expired." *Id.* at 313-314.

4

ultimately prevail at summary judgment on the issue of waiver, the Court will not dismiss the claims at this time. Accordingly, at this time, Defendants' Motion to Dismiss on this basis is DENIED.

### C. Enforcement of appraisal award

Defendants argue that the parties agreed to undertake the appraisal procedure set forth in the policy, and because that procedure was followed, the Court should enforce the resulting appraisal award.

The policy provides that "[n]o one may bring a legal action against [the insurer] under the coverage unless . . . all of the 'terms' of this coverage have been complied with." (Doc. 3-1, PAGEID #109). The appraisal procedure provides that the insurer and insured will each select an appraiser. (Doc. 3-1, PAGEID # 108). The two appraisers must then select an impartial umpire, "determine and state separately the amount of each loss;" and "determine the value of covered property items at the time of the loss, if requested." The policy provides: "If the appraisers submit a written report of any agreement to [the insurer], the amount agreed upon will be the amount of the loss." If the appraisers do not agree, the appraisers will submit their differences to the umpire. The policy provides: "Written agreement so itemized and signed by any two of these three, sets the amount of the loss."

Plaintiffs argue that the appraisal award should not be enforced because it is the result of fraud or mistake. Specifically, Plaintiffs claim that the appraisal award does not include loss of business income, which was compensable under the policy; and Defendants failed to inform Plaintiffs of their rights during the appraisal process, or that the appraisal would be binding.

5

"Under Ohio law, a court should not generally interfere with an appraisal award absent fraud or manifest mistake." *Am. Storage Centers v. Safeco Ins. Co. of Am.*, 651 F. Supp. 2d 718, 724 (N.D. Ohio 2009) (citing *Lakewood Manufacturing Company v. Home Insurance Company of New York*, 24 Ohio Misc. 244, 422 F.2d 796, 798 (6th Cir. 1970)). However, Plaintiffs are entitled to develop a record on their claim of fraud against Defendants. Therefore, the Court concludes that based on the pleadings, Defendants are not entitled, at this time, to enforcement of the appraisal award.

### D. Bad faith

As to the dismissal of Plaintiffs' bad faith claim, Defendants rely on caselaw which holds that if the reason for denial of coverage is upheld, it is *per se* reasonable and cannot support a claim for bad faith against the insurer. *See*, *e.g. Hahn's Elec. Co. v. Cochran*, 2002 WL 31111850, *8 (Ohio App. 2002). However, as this Court has recognized, Ohio courts do permit an insured to bring a claim of bad faith "based on failure to determine whether there was a lawful basis to deny coverage-even if he fails to establish the underlying coverage claim." *Poneris v. Pennsylvania Life Ins. Co.*, No. 1:06-CV-254, 2007 WL 3047232, at *2 (S.D. Ohio Oct. 18, 2007). Therefore, to the extent that Defendants seek judgment in their favor on Plaintiffs' claim of bad faith, Defendants' Motion to Dismiss is DENIED.

### E. Bifurcation and stay

Defendants request that this Court bifurcate and stay Plaintiff's non-contract claims. Defendants argue that bifurcation and stay are necessary to avoid prejudice. The Court finds that bifurcation and a stay is unnecessary at this time.

6

### III. CONCLUSION

Based on the foregoing, Defendants Goodville Mutual Casualty Co., Claim-Net, LLC and Dennis Hester's Motion to Dismiss (Doc. 12) is **DENIED**.

**IT IS SO ORDERED.**

*/s/ Michael R. Barrett*
JUDGE MICHAEL R. BARRETT
